UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America<br>ex rel. Patricia Lesko, | Civ. No. 23-3216 (PAM/SGE) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| The Minnesota Orchestral<br>Association, | |
| Defendant. | |

This matter is before the Court on Defendant the Minnesota Orchestral Association's Motion to Dismiss. (Docket No. 57.) For the following reasons, the Court grants the Motion.

**BACKGROUND**

This lawsuit arises out of an allegedly fraudulent scheme by Defendant the Minnesota Orchestral Association ("the Orchestra") to procure a loan. In 2020, under the Coronavirus Aid, Relief, and Economic Security Act, Congress created the Paycheck Protection Program ("PPP"), 15 U.S.C.§ 636(a)(36), to provide loans through the Small Business Association ("SBA") to small businesses, nonprofits, and other organizations facing challenges brought on by the Covid-19 pandemic. (Am. Compl. (Docket No. 15) ¶ 1.) The PPP provided forgivable loans with a fixed interest rate of 1% to cover expenses including payroll, rent, mortgage interest, leases, and utilities. (Id. ¶ 36.) Relator Patricia Lesko, an investigative journalist, brought this lawsuit on behalf of herself and the United States, asserting that the Orchestra, a nonprofit, defrauded the federal government into

issuing and forgiving its PPP loan. (Id. ¶¶ 15–16.) The United States declined to intervene but allowed Lesko to maintain the action in its name. (Docket No. 8.)

To apply for a "first draw" PPP loan, borrowers would submit various materials including a "Borrower Application Form." (Am. Compl. ¶ 55.) This form required applicants to include the number of employees in their organization, but did not define "employee" or provide any instructions as to how to calculate that number. (See id.) In relevant part, the statute regarding PPP loan eligibility states:

> During the covered period, in addition to small business concerns, any . . . nonprofit organization, described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the . . . nonprofit organization . . . employs not more than the greater of—
> (I)   500 employees; or
> (II)  if applicable, the size standard in number of employees established by the Administration for the industry in which the . . . nonprofit organization . . . operates.

15 U.S.C. § 626(a)(36)(D)(i). In other words, the statute allows organizations to calculate the number of employees to demonstrate eligibility for a loan in two ways: (I) by employing no more than 500 people or (II) by meeting the SBA size standard. See id. To calculate whether it met the SBA size standard, an organization could average the number of employees for its industry over either calendar year 2019 or the 12 months immediately preceding its loan application. See id. For the Orchestra, this "average" employee number also happens to be 500, which Lesko concedes. (Id. ¶ 45, 48–49.) The Orchestra's Borrower Application Form indicated 423 employees. (Id. ¶ 135.) On April 15, 2020, the Orchestra's first-draw loan was approved for $4,503,852. (Id. ¶¶ 132–33.) On August 25, 2023, the Orchestra's loan was forgiven. (Id. ¶ 138.)

2

The IRS requires tax exempt organizations to list the number of employees who received W-2 forms for that calendar year on a Form 990. (Id. ¶ 82.) The Orchestra's IRS Form 990s from fiscal years ending in August 2019 and 2020 reported 823 employees, 400 more than the Borrower Application Form listed. (See id. ¶¶ 135–36.) Lesko claims that "[t]he size of the gap between the number of W-2 employees reported in [the Orchestra's] Form 990s and the average number of employees stated on [its] PPP application[] also make it highly probably that [the Orchestra's] actual average number of employees exceeds the employee count eligibility requirements" for PPP loans. (Id. ¶ 100.) Thus, she alleges that the Orchestra intended to defraud the government by inducing it to provide a loan for which the Orchestra was not eligible because it employed more people than the PPP statute allowed.

The four-count Amended Complaint claims that the Orchestra violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., by presenting or causing to be presented a false claim or statement for payment or approval; converting funds for which it was ineligible; and avoiding or decreasing an obligation to repay the PPP loan. The Orchestra moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6). Additional facts are incorporated into the discussion below.

**DISCUSSION**

**A.    Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678. At this stage, the Court assumes the allegations in the Amended Complaint are true and views them in the light most favorable to Lesko. See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).

**B.    Rule 9(b)**

A complaint that alleges "violations of the FCA must [also] comply with Rule 9(b)," which requires stating with particularity "the circumstances constituting fraud." United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citation omitted); see Fed. R. Civ. P. 9(b). Generally, Rule 9(b) requires identification of "the 'who, what, where, when, and how' of the alleged fraud." Joshi, 441 F.3d at 556 (quoting United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003)). "[T]he relator must provide sufficient details 'to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" United States ex rel. Thayer v. Planned Parenthood of the Heartland, 765 F.3d 914, 919 (8th Cir. 2014) (quoting Costner, 317 F.3d at 888).

The Orchestra argues that the Amended Complaint should be dismissed because Lesko fails to allege facts sufficient to lead to a reasonable inference of falsity and fraud. As described above, the Borrower Application Form did not define "employee" or provide instructions as to how to calculate that number. Indeed, Lesko does not allege that the Orchestra had more than 500 employees on its payroll when it applied for the loan or that it impermissibly dismissed employees to qualify for the loan and later hired them back after receiving approval for the loan. Instead, she contends that the Orchestra had more than 500 employees using the statute's second method of calculating the number of employees, the SBA size standard—the average number of employees over either 2019 or the 12 months preceding the Orchestra's loan application. Neither the Borrower Application Form nor the forgiveness application reference an "average employee" number.

The Orchestra also argues that Lesko's inference regarding the "size of the gap" between the number of employees listed on the Borrower Application Form and the numbers listed in the IRS Form 990s is an "unwarranted logical leap that the Court is not required to accept as true, particularly on the heightened pleading standard required for fraud." (Def.'s Mem. in Supp. (Docket No. 59) at 10.) Lesko concedes that "the Form 990 count ('W-2 employee count') includes new and departed employees who were not employed for the entirety year, which also means that the Form 990 count for a year is likely to be higher than a count based on the average number of employees per pay period for the year." (Am. Compl. ¶ 87.) The Orchestra contends that it has many W-2 employees, such as replacement musicians, who work only once or twice during the year, yet they are included in the employee count on an IRS Form 990. And perhaps most

5

pertinently, April 2020 was the height of the pandemic when many businesses had to reduce their payrolls due to the Covid-19 lockdowns. For these reasons, Lesko fails to allege sufficient facts to plead an FCA claim.

C.  **Public Disclosure Bar**

The Orchestra further argues that the public disclosure bar precludes Lesko's FCA claims, even if her allegations satisfy Rule 9(b). "The public disclosure bar requires an FCA claim to be dismissed where the allegations are based on information that has been publicly disclosed, unless the person making the claim 'is an original source of the information.'" United States ex rel. Ambrosecchia v. Paddock Labs., 855 F.3d at 953 (quoting 31 U.S.C. § 3730(e)(4)). The purpose of the public disclosure bar is "to encourage private enforcement suits by legitimate whistleblowers while barring suits by opportunistic qui tam plaintiffs who base their claims on matters that have been publicly disclosed by others." United States ex rel. Newell v. City of St. Paul, 728 F.3d 791, 794 (8th Cir. 2013) (quotation omitted). Dismissal is thus required if (1) "the defendant has shown public disclosure under § 3730(e)(4)(A)," (2) such disclosures support "the critical elements of the fraudulent transaction," and (3) "the relator does not fit § 3730(e)(4)(B)'s definition of 'original source.'" United States v. CSL Behring, L.L.C., 855 F.3d 935, 941 (8th Cir. 2017) (quoting United States ex rel. Paulos v. Stryker Corp., 762 F.3d 668, 692 (8th Cir. 2014)). The FCA provides that:

> (A) The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
> 　(i)　in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

The Orchestra argues that the information in Lesko's Amended Complaint was previously disclosed. It first contends that much of Lesko's information was contained in federal reports, the second enumerated category under the FCA. Indeed, there is no dispute that the IRS Form 990s and the Borrower Application Form were publicly available, as Lesko concedes: "[t]he SBA created and maintained a database providing detailed information on PPP loans, including information about the borrower, dates of receipt and forgiveness of funds, eligibility facts . . ., lenders, and amounts loaned and forgiven." (Am. Compl. ¶ 77.) The PPP database is available online, as are IRS Form 990s. (Id. ¶ 77 n.29.) The Orchestra next contends that Lesko's information derived from the news media, the third enumerated category under the public disclosure bar, because she referenced an article available on ProPublica's website (id. ¶ 135), and "a website need not function as a news outlet to qualify as news media under 3730(e)(4)(A)(iii)." United States ex rel. Cherwenka v. Fastenal Co., Civ. No. 14-187, 2018 WL 2069026, at *7 (D. Minn. May 3, 2018) (Magnuson, J.). The Amended Complaint also references a press release from the Orchestra's website and a Star Tribune article, which no doubt are news media sources. (Am. Compl. ¶ 133 n.53–54.)

Even so, Lesko further asserts that information did not sufficiently identify the Orchestra's allegedly fraudulent scheme. But the Eighth Circuit is clear that "a patently

7

fraudulent transaction" need not be publicly disclosed for the bar to apply. United States ex rel. Rabushaka v. Crane Co., 40 F.3d 1509, 1514 (8th Cir. 1994). Courts "consider 'public disclosures contained in different sources' as a whole to determine whether they collectively 'provide information that leads to a conclusion of fraud.'" CSL Behring, 855 F.3d at 944 (quoting United States ex rel. Gilligan v. Medtronic, Inc., 403 F.3d 386, 390 (6th Cir. 2005)). The five essential elements from which Lesko infers fraud are: (1) only nonprofits with fewer than 500 W-2 employees could receive PPP loans; (2) the Orchestra is a nonprofit; (3) it applied for and received a PPP loan; (4) its IRS Form 990s list 923 W-2 employees in 2019 and 2020; and (5) it had significant financial assets. Lesko fails to sufficiently allege that the essential elements were not publicly disclosed before this lawsuit.

Finally, "[a] relator who qualifies as an original source is exempt from the public disclosure bar," even if the essential elements of the FCA claims were publicly disclosed. Ambrosecchia, 855 F.3d at 954. An original source is an individual "who has knowledge that is independent of and materially adds to the publicly disclosed allegations." 31 U.S.C. § 3730(e)(4)(B). But Lesko asserts that she need not prove that she is an original source because there was no public disclosure of the allegations or transaction relating to the Orchestra's alleged fraud before this lawsuit. As such, she has waived any argument to that end.

Even if the Amended Complaint met Rule 9(b)'s heightened pleading standard, the essential elements of the claims were publicly disclosed and Lesko was not an original

source of the information. Thus, the public disclosure bar applies, which also warrants dismissal.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant the Minnesota Orchestral Association's Motion to Dismiss (Docket No. 57) is **GRANTED** and this matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 16, 2025                                 *s/ Paul A. Magnuson*
                                                     Paul A. Magnuson
                                                     United States District Court Judge